468 A.2d 458

**Andrea W. MAHONEY, Appellant,**

**v.**

**Felty A. FURCHES and Lula Belle Furches, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1983.

Decided Dec. 8, 1983.

Sam Ferguson Musser, Lancaster, for appellant.

David E. Wagenseller, Lancaster, for appellees.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHER-TY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from the Superior Court's affirmance of the Lancaster County Common Pleas Court's grant to Appellees of a demurrer to Appellant's request for declaratory relief. We granted allocatur to consider a question which has heretofore not been addressed by this Court. Because we are in disagreement with both the Superior Court and the lower court's analysis of the case, we reverse and remand.

This action arises out of a land sale and purchase money mortgage between the two parties. Appellees sold to Ap-

pellant certain lands which they owned in Lancaster County and personally financed the sale. The mortgage note contained the following repayment clause:

"Whereas, the Mortgagor [Appellant], by bond and/or note dated concurrently herewith, stands bound to pay the Mortgagee [Appellees] the just principal debt of THREE HUNDRED SIXTY THREE THOUSAND ONE HUNDRED TWENTY and 80/100 DOLLARS ($363,-120.80), payable at the rate of Nineteen Thousand Dollars ($19,000.00) annually, commencing on April 1, 1979, and continuing each twelve (12) months thereafter until paid; the interest on the unpaid balance shall be payable at the rate of seven and one-half percent (7½) per annum, payable annually, commencing April 1, 1979, and continuing each twelve (12) months, thereafter until the principal debt is paid in full as aforesaid. Interest shall begin accruing on the date of settlement."

The note was silent as to any right of prepayment of the debt.

Several months after closing on the property, Appellant entered into several sales agreements with various buyers to sell portions of the recently purchased tract.

Subsequent to these agreements, Appellant, through her attorney, attempted to gain a release as to those tracts she was selling. Appellees refused to release any of the land. Appellant then sought to prepay the entire mortgage debt with interest to the date of tender. This was also refused. As a final attempt to obtain a release on the land, Appellant offered to arrange for substituted security by requesting a certain bank guarantee payment of the mortgage according to its terms in exchange for a release of the lands. Again, Appellees refused.

Appellant, via an action for declaratory relief, then asked the court to declare that under the mortgage terms, she was entitled to satisfaction and release upon payment of the principal balance and interest thereon. The lower court granted Appellees' preliminary objection in the nature of a demurrer, and the Superior Court affirmed. *Mahoney v.*

*Furches*, 309 Pa.Super. 129, 454 A.2d 1117 (1983). The reasoning of the lower court in granting the demurrer was based upon prior Superior Court decisions interpreting mortgage clauses that were silent as to prepayment, *Beth-June, Inc. v. Wil-Avon Merchandise Mart, Inc.*, 211 Pa.Super. 5, 233 A.2d 620 (1967); *Hensel v. Cahill*, 179 Pa.Super. 114, 116 A.2d 99 (1955).

■ In *Beth-June*, it was stated, and correctly so, that "[W]hen the payment of principal is due depends upon the wording of the mortgage *and* of course *the intention of the parties thereto."* [211 Pa.Super. at page 910, 233 A.2d 620, citing *Hensel v. Cahill, supra* (Emphasis added)]. *Beth-June* goes on to state rules by which a mortgage should be interpreted absent a specific prepayment clause. They provide:

> "A mortgage payable within a certain time may be paid off at any time, thus a mortgage payable within a year from date can be paid off at any time during the year. *Horstman v. Gerker*, 49 Pa. 282 (1865). However, a mortgage which is payable within a certain number of years, if it calls for installments in an amount which will evenly amortize the debt throughout the term of the obligation does not afford a mortgagor the right of prepayment, and the installments are the minimum which must be paid and the maximum which must be accepted by the mortgagee. *Hensel v. Cahill*, supra; Ladner on Conveyancing in Pennsylvania, Section 9, 10, page 236 (3rd Ed.1961)."

*Beth-June*, 211 Pa.Super. at 910, 233 A.2d at 622.

Based on these rules, the lower court interpreted the instant repayment clause as falling into the latter category and thus granted the demurrer.

In affirming the lower court, the Superior Court also relied on *Hensel* and *Beth-June*, and cited a Connecticut case, *Dugan v. Grzybowski*, 165 Conn. 173, 332 A.2d 97 (1973), for the proposition that a mortgagor could not, without a prepayment clause, compel a mortgagee to accept full payment of the balance of the principal, including

interest due, before the due date of the mortgage. In support of this conclusion, the Superior Court offered the following reasoning relied upon by the Connecticut court:

"As one text writer explains the custom of denying prepayment rights, '[t]his freedom of the mortgagee from anticipation is of increasing value as the mortgage becomes more and more an investment instrument, designed to secure a regular flow of income. Current institutional mortgages customarily exact substantial amounts as conditions of accepting prepayment.' 3 Powell, Real Propery (sic) p. 656 n. 4. In contrast, a mortgage note designed primarily to give the lender security for the timely repayment of his money at a profitable rate of interest, will more likely contain a prepayment clause without a penalty attached. The object of the clause is generally to encourage repayment, whereas in absence of such a clause, courts tend to construe the mortgage note as intended to secure regular investment income to the mortgage (sic) over a definite period of time. Compare, as examples of the first instance, ... *Beth-June, Inc. v. Wil-Avon Merchandise Mart, Inc.*, 211 Pa.Super. 5, 233 A.2d 620, with ... *Hensel v. Cahill*, 179 Pa.Super. 114, 116 A.2d 99, as examples of the latter...."

*Mahoney*, 309 Pa.Super. at 133, 454 A.2d at 1119, citing *Dugan v. Grzybowski, supra*, 165 Conn. at 176–177, 332 A.2d at 99 n. 2 (citations omitted).

While we understand the logic of the Connecticut court, we do not agree with the result that court reaches since the net effect of that result is to raise a presumption against prepayment where a mortgage note contains no prepayment clause. As the quote from *Dugan* indicates, this presumption arises ostensibly because private mortgage notes are becoming more and more valuable as an investment instrument, and thus freedom from mortgage anticipation is very important to the mortgagee who wishes to maintain a steady income over time.

We may agree that the use of the mortgage for private investment purposes is increasing and may also support a

policy encouraging such use. To do so, however, we need not embrace the conclusion reached by the Connecticut court and ignore other important considerations merely to accommodate this trend. Rather, and indeed because of this increased use of the mortgage as an investment instrument, we must consider the policy encouraging such use in light of the implications it might have on the free alienability of land—a consideration we feel is the dominant one, since the fundamental purpose of the mortgage note in most instances is to secure a debt incurred in the purchase of land from which the debt arises rather than to secure investment income for the mortgagee.

When the mortgagee takes a mortgage note for investment purposes, the usual effect will be to restrain the mortgagor from alienating the land securing the note for the duration of the mortgage, since the mortgagor cannot pass clear title to that land until the note is satisfied. Coterminous with this result is the possibility that the mortgagee can indirectly control or restrain the mortgagor's ability to subdivide and sell portions of the mortgaged tract merely on the basis of his security interest in the land.

Taking cognizance of the general policy in this Commonwealth and elsewhere against restraints on alienation, we find it would be against such policy to presume, simply from the absence of a clause so allowing, that a mortgagor could not pay off his debt and alienate his land as he so desired. Instead, we think it wiser to raise a presumption of a right to prepayment of the note where a mortgage is silent as to that right. This presumption could be rebutted by showing a contrary intent mutually manifested by the parties. Such a presumption would not work a hardship on the mortgagee since, in virtually all instances, he is the drafter of the mortgage note and can thus include within the note a clause stating that the note is not subject to prepayment. This would put the mortgagor on notice that he will in all probability be restrained from selling the land for the duration of the term. If he signs the note contain-

ing such a provision, he will then be bound by it even though it may restrain his right to its sale or use.[1]

■ Having seen the alternative, we think the more reasonable rule is to place the burden upon the person who has drafted the instrument to demonstrate that the parties intended to allow the land to be secured for the duration of the mortgage note. We therefore hold that where a mortgage note is silent as to the right of prepayment, there arises a presumption that the debt may be prepaid. We now proceed to apply this rule to the facts of the instant case.

■ Where there is a challenge to the sustaining of a preliminary objection in the nature of a demurrer, an appellate court's scope of review is limited. Recently, we reiterated this standard in *Vattimo v. Lower Bucks Hosp., Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983), as follows:

"All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960)."

*Vattimo,* 502 Pa. 244, 465 A.2d at 1232–33.

Viewing Appellant's complaint in this light, we find that there were sufficient facts pleaded to take the action beyond the demurrer stage.

---

**1.** While not at issue in the instant appeal, we at this juncture note with approval the Superior Court's conclusion that, consistent with the policy against restraints on alienation, even where the mortgage explicitly states there is no right to prepay the note, if the mortgagor can provide the mortgagee with the benefit of his bargain under the terms of the note, he will be allowed to have a release of his land following the substitution of security or other arrangement. *Mahoney, supra,* 309 Pa.Super. at 136, 454 A.2d at 1120.

We therefore remand the instant case to the lower court for proceedings consistent with this opinion.

Reversed and remanded.

LARSEN, J., dissents and would affirm, and in support thereof cites the Superior Court opinion in this case.